JUDGE DAVID GUADERRAMA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **ERIK SALAIZ,** | § |
| | § |
| **Plaintiff,** | § |
| | § |
| **v.** | § |
| | § |
| **GRANGER FINANCIAL LLC**, a Virginia | § |
| Limited Liability Company, and **JEFFREY** | § |
| **GRANGER JR.** | § |
| | § |
| **Defendants.** | § |
| | § |

EP22CV0121

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. Plaintiff ERIK SALAIZ ("Plaintiff") is a natural person and is a citizen of the Western District of Texas and was present in the Western District of Texas during all calls at issue in this case.

2. Defendant GRANGER FINANCIAL LLC, ("Granger Financial") is a Limited Liability Company organized and existing under the laws of Virginia and can be served via registered agent Jeffrey Granger Jr. at 41788 Marigold Mill Place, Ashburn, Virginia 20148.

3. Defendant JEFFREY GRANGER JR. ("Granger Jr.") is a natural person, resident of Virginia, and Chief Executive Officer of Granger Financial and can be served at 41788 Marigold Mill Place, Ashburn, Virginia 20148.

4. Defendant Granger Financial and Granger Jr. (together "Defendants")

## NATURE OF ACTION

5. Plaintiff brings this Complaint and Demand for Jury Trial against Defendants to stop placing unauthorized calls to Plaintiff's personal cell phone and to obtain redress as authorized by statute.

6. Defendants offer auto insurance polices. As part of marketing their services, Defendant Granger Financial and their agents placed unauthorized calls to Plaintiff's cell phone that used an automatic telephone dialing system ("ATDS").

7. Defendant Granger Financial make unsolicited and unauthorized phone calls to thousands of consumers en mass using an ATDS.

8. Defendants did not obtain express written consent from Plaintiff prior to calling his cell phone, and Defendants are therefore liable under the Telephone Consumer Protection Act 47 U.S.C. § 227 (the "TCPA") and its implementing regulation, 47 C.F.R. § 64.1200(a)(2).

9. Congress enacted the TCPA in 1991 to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

10. The TCPA targets unauthorized calls exactly like the ones alleged in this case, based on Defendant LGCY's use of technological equipment to spam consumers on a grand scale without their consent.

11. By placing the calls at issue, Defendants have violated the statutory rights and privacy of Plaintiff and caused him to suffer damages that are recognized by statute.

12. Plaintiff therefore seeks an injunction requiring Defendant Granger Financial to stop calling his personal cell phone, as well as an award of actual and statutory damages, civil penalties, costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

13. This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this case arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

14. This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendants telemarketing robocalls to Plaintiff; adds little complexity to the case; and doesn't seek money damages, so it is unlikely to predominate over the TCPA claims.

15. This Court has personal jurisdiction over Defendants because they conduct business in this District and in the State of Texas and because the events giving rise to this lawsuit occurred in this District.

16. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendants regularly conducts business in the state of Texas and in this District, and because the wrongful conduct giving rise to this case occurred in this District.

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991, 47 U.S.C. § 227

17. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these

calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

18. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

19. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

20. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

21. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

22. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

23. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

inconvenient.

24. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

25. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

26. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

27. The FCC confirmed this principle in 2013, when it explained that "a seller …may be held vicariously liable under federal common law principles of agency for violations of either

section 227(b) or section 227(c) that are committed by third-party telemarketers." In the Matter of the Joint Petition Filed by Dish Network LLC, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

28. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

29. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

30. Plaintiff's personal cell phone (915) 540-5210 has been on the National-Do-Not-Call-Registry since June 2021.

31. Defendant Granger Financial offers auto insurance policies to consumers.

32. Defendant Granger Jr. controls and dominates Defendant Granger Financial.

33. Defendant Granger Jr. approves of his representatives to make unauthorized phone calls to thousands of consumers cellular and residential phone numbers using an ATDS knowing they are in violation of the TCPA.

34. Defendant Granger Jr. has full control over Defendant Granger Financial and has the authority to stop the unauthorized phone calls however has refused to do so because it benefits Defendants financially when consumers enroll in Defendants auto insurance policies.

35. Plaintiff received at least six unauthorized phone calls within 30 days to his personal cell phone (915) 540-5210 from one of Defendants representatives named Miles Edwards soliciting auto insurance services on behalf of Defendants.

36. Plaintiff received an email from Miles from miles@grangerfinancial.com that contained Defendant Granger Financials information revealing the company responsible for the unauthorized phone calls.

37. The unauthorized phone calls made by Miles to Plaintiff's personal cell phone (915) 540-5210 generally had a delay of 3-4 seconds of dead air before an audible tone connected the Plaintiff to Miles, indicating the calls were initiated using an ATDS.

38. Table A displays the calls made by the Defendants (Updated Granger calls 3/7/22)

| Date | Time | Caller ID |
|------|------|-----------|
| 2/15/2022 | 2:20PM | 703-879-1605 |
| 2/17/2022 | 12:32PM | 703-879-1605 |
| 2/28/2022 | 3:44PM | 703-879-1605 |
| 2/28/2022 | 4:08PM | 703-879-1605 |
| 3/2/2022 | 10:06AM | 703-879-1605 |
| 3/3/2022 | 4:11PM | 703-879-1605 |

Table A.

39. Defendants employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

40. Defendants and their agents and co-conspirators amassed lists of thousands of vehicle owners from public records, vehicle sales and registration records, and data aggregators

and then sent phone calls using an ATDS *en masse* to market their auto insurance policies.

41. The Defendants never sent Mr. Salaiz any do-not-call policy.  Plaintiff sent an internal do-not-call policy request to info@grangerfinancial.com.

42. On information and belief, the Defendants did not have a written do-not-call policy while it was sending Mr. Salaiz the unsolicited calls.

43.  On information and belief, the Defendants did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

44. Defendant Granger Jr. participated in, facilitated, directed, authorized, knew of or willfully ignored the false and misleading sales practices and unlawful robocalling, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful robocalling.

45. Defendants refuse to take any action to stop or curtail the unlawful sales practices and robocalling because these practices benefit Defendants financially.

46. Plaintiff never consented to receive the calls alleged herein. Plaintiff had no relationship with Defendants prior to the calls alleged herein.

## DEFENDANT GRANGER JR. IS PERSONALLY LIABLE

47. Defendant Granger Jr. refuses to take any action to stop or curtail the unlawful sales practices and robocalling because these practices benefit Defendant Granger Jr. financially.

48. "If the officer directly participated in or authorized the statutory violation, even though

    acting on behalf of the corporation, he may be personally liable. See *United States v*

    *Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985)

49. The "well-settled" tort rule provides that "when corporate officers directly participate in

    or authorized the commission of a wrongful act, even if the act is done on behalf of the

    corporation, they may be personally liable." *General Motos Acceptance Corp. v. Bates*,

    954 F.2d 1081, 1085 (5th Cir. 1992). The Fifth Circuit has elaborated that "the thrust of

    the general [tort] rule is that the officer to be held personally liable must have some

    direct, personal participation in the tort, as where the defendant was the 'guiding spirit'

    behind the wrongful conduct....or the 'central figure' in the challenged corporate

    activity." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985) (Citing

    *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980)) (Citing

    *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)

50. Quoting Texas v. American Blastfax:

    > The Court finds the above principles applicable to the TCPA that is, an officer may be
    > personally liable under the TCPA if he had direct, personal participation in or
    > personally authorized the conduct found to have violated the statute, and was not
    > merely tangentially involved. Individuals who directly (and here, knowingly and
    > willfully) violate the TCPA should not escape liability solely because they are
    > corporate officers. As the State persuasive argues, to hold otherwise would allow the
    > individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and
    > repeat their conduct. Congress surely did not intend to permit such a result in passing
    > the TCPA.

    > To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the
    > "central figures" behind the TCPA violations. They were the two persons who
    > controlled all of Blastfax's day-to-day operations. They both had direct, personal
    > involvement in and ultimate control over every aspect of Blastfax's wrongful contuct
    > that violate the TCPA, and/or directly controlled and authorized this conduct. And
    > they did so with their eyes and pocketbooks wide open. After October 5, 2000, Greg
    > and Michael Horne had good reason to believe they were running a business that

violated the TCPA. On February 9, 2001, they knew they were. Yet they continued to direct their company to send unsolicited intrastate fax advertisements. This is fare more than a simple derivative liability case. Accordingly, the Court *899 holds defendants Greg and Michael Horne are jointly and severally liable with Defendant Blastfax, Inc., for all TCPA damages in this lawsuit." Texas v. American Blastfax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001)

51. The Same Court held that corporate officers were also personally liable for DTPA violations

The State contends Greg and Michael Horne are personally liable for any DTPA damages because they were solely responsible for the violating conduct.....For the same reasons discussed in finding the individual defendants personally liable under the TCPA, the Court agrees. See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37 (Tex. Civ. App.-Houston [1ˢᵀ Dist.] 1985, no writ) (finding personal liability for corporate officer in DTPA misrepresentation claim, based on general rule that "a corporate agent knowingly participating in a tortious or fraudulent act may be held individually liable, even though he performed the act as an agent for the corporation......Accordingly, the Court finds defendants American Blastfax, Inc., Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages for their violations of the DTPA." *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001

52. At all times material to the Complaint, acting alone or in concert with others, Defendant Granger Jr. has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendant Granger Financial including the acts or practices set forth in this Complaint.

53. Defendant Granger Jr. is the principal director and operator of Defendant Granger Financial controls the day-to-day operations of Granger Financial and directed their employees, agents, salespersons, and solicitors to make TCPA violating phone calls and to solicit auto insurance policies on behalf of Granger Financial.

54. Defendant Granger Jr. is not merely a bystander. He is the mastermind that schemed, planned, directed, initiated, and controlled the illegal and fraudulent behavior.

55. Defendant Granger Jr. is well aware his conduct violated the TCPA and Tex. DPTA and refused to alter their behavior.  Defendant Granger Jr. is the sole director Granger Financial and the only person with the power to make the unlawful, fraudulent, and unethical behavior stop.  Yet, Defendant Granger Jr. has taken no steps to stop the behavior because the behavior benefits Granger Jr. financially.  Defendant Granger Jr. breaks the law with his eyes and pocketbooks wide open.

56. Defendant Granger Jr. should be held liable because to do otherwise would simply allow him to dissolve Granger Financial and set up a new corporation. This would result in both the TCPA and DTPA being unenforceable.

### The Texas Business and Commerce Code 305.053

57. The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

58. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

### The Plaintiff's cell phone is a residential number

59. The calls were to the Plaintiff's cellular phone (915) 915-540-5210 which is  Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phone to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, watching movies, listening to music and sending and receiving text messages. The

Plaintiff further has his cell phone registered in his personal name and pays the cell phone from his personal accounts.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

60. Plaintiff has been denied the use of his phone, enjoyment of his phone, and had the functionality of his phone decreased because of unnecessary charging, erosion of phone memory, and had his privacy invaded by the harassing robocalls.

61. Defendant's calls harmed the Plaintiff by causing the very harm that Congress sought to prevent a "nuisance and invasion of privacy."

62. Plaintiff has been annoyed, harassed, and irritated by robocalls placed by the Defendants and other similar companies.

63. Defendant's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone by placing unwanted telemarketing calls to the Plaintiff.

## FIRST CAUSE OF ACTION

### Willful and/or Knowing Violation of 47 U.S.C. § 227
### Telephone Consumer Protection Act of 1991
### (Against all Defendants)

64. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

65. Defendants and/or their agents placed calls to Plaintiff's cellular telephone.

66. Plaintiff never consented to receive calls from Defendants.  Plaintiff has no relationship with Defendants.

12

67. Defendants' calls were made for purposes of advertising and marketing Defendants auto insurance policies.  These calls constituted commercial advertising and telemarketing as contemplated by the TCPA.

68. The calls were made using an ATDS to the cellular phone of Plaintiff in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

69. As a result of their unlawful conduct, Defendants repeatedly invaded the personal privacy of Plaintiffs, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling Plaintiff to recover $500 in statutory damages for each violation and an injunction requiring Defendants to stop their unlawful calling campaigns.

70. Not only did Defendants make these violating calls, Defendants and/or their agents did so "knowingly" and/or "willfully' under 47 U.S.C. § 227 (b)(3)(C).

71. If the Court finds that Defendants willfully or knowingly violated this subsection, the Court may exercise its discretion to increase the amount of the award from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

## SECOND CAUSE OF ACTION

### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 C.F.R. § 64.1200(C))

### (Against All Defendants)

72. Plaintiff incorporates the forgoing allegations as if fully set forth herein.

73. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the National Do-Not-Call Registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).

74. Defendants called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

75. Plaintiff was statutorily damaged at least six (6) times under 47 U.S.C. § 227(c)(3)(F) by the Defendants by the telephone calls described above, in the amount of $500 per call.

76. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

77. Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## THIRD CAUSE OF ACTION
### Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)
### (Against All Defendants)

78. Plaintiff incorporates the forgoing allegations as if fully set forth herein.

79. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

    a.   written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1)[2];

    b.  training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2)[3]; and,

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).

    c.  in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

80. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

81. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

### FOURTH CAUSE OF ACTION
### Violations of The Texas Business and Commerce Code 305.053

82. Plaintiff incorporates the foregoing allegations as if set forth herein.

83. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053,** by making non-emergency telemarketing robocalls to Mr. Salaiz cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The Defendants violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

84. Plaintiff is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

85. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053(c)**

---

[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Erik Salaiz prays for judgment against the defendants jointly and severally as follows:

A.      Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.      A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.      An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.      An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for six calls.

E.      An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F.      An award to Mr. Salaiz of damages, as allowed by law under the TCPA;

G.      An award to Mr. Salaiz of interest, costs and attorneys' fees, as allowed by law and equity.

H.      Such further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.


April 8, 2022                         Respectfully Submitted,

16

Erik Salaiz
Plaintiff, Pro Se
319 Valley Fair Way
El Paso, Texas 79907
915-540-5210
Salaiz.ep@gmail.com